UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUCKY STAR ENTERPRISES III, LLC,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | CASE NO. C21-1698JLR<br><br>ORDER GRANTING MOTION TO DISMISS |

## I.   INTRODUCTION

Before the court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") motion to dismiss.  (Mot. (Dkt. # 6); Reply (Dkt. # 11).)  Plaintiff Lucky Star Enterprises III, LLC ("Lucky Star") opposes the motion.  (Resp. (Dkt. # 10).)  The court has considered the motion, the parties' submissions, the relevant portions of the record, and the

//

//

ORDER - 1

applicable law. Being fully advised,[1] the court GRANTS Wells Fargo's motion to dismiss.

## II.  BACKGROUND

Lucky Star is a limited liability company ("LLC") that operates fitness centers in Snohomish County, Washington. (Compl. (Dkt. # 1-1) ¶¶ 1.1, 2.1, 3.1.) Sometime before February 4, 2021, it hired Flynn Construction Management General Contracting Inc. ("Flynn") to remodel a fitness center located in Marysville, Washington. (*Id.* ¶ 3.1.) On or about February 4, 2021, Lucky Star received an email that purported to be from Flynn, which attached an invoice for payment in the amount of $125,621.85. (*Id.* ¶ 3.2.) The email instructed Lucky Star to send that sum by wire transfer to an account at a Wells Fargo branch in Pennsylvania, which Lucky Star later learned had been closed. (*Id.* ¶ 3.3.)

On March 12, 2021, Lucky Star did as the email instructed it to do and sent $125,621.85 from an account it held with U.S. Bank National Association ("U.S. Bank") to the Wells Fargo account described in the email. (*Id.* ¶¶ 3.4.) Wells Fargo received the funds on the same date—March 12, 2021—and placed them into the designated account. (*Id.* ¶ 3.6.) Approximately six days later, Lucky Star received a phone call from Wells Fargo informing it that the account into which the $125,621.85 had been transferred "had been flagged by Wells Fargo." (*Id.* ¶ 3.7.) A Lucky Star employee contacted Wells Fargo later that same day and confirmed that the Wells Fargo account had been flagged

---

[1] Neither party requests oral argument (*see* Mot. at 1; Resp. at 1), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

but was allegedly assured by Wells Fargo that "the wired funds remained on deposit in" the flagged account and that they "would be deposited back into Lucky Star's account within 72 hours." (*Id.* ¶ 3.8.) Flynn also contacted Wells Fargo on March 18, 2021 and was allegedly told the same information that Wells Fargo had relayed to Lucky Star. (*Id.* ¶ 3.9.)

When Wells Fargo did not deposit the $125,621.85 back into Lucky Star's account, as it allegedly promised to do, Lucky Star and U.S. Bank—acting on Lucky Star's behalf—requested that Wells Fargo send the money back to Lucky Star's account. (*Id.* ¶¶ 3.10, 3.12.) Wells Fargo refused to do so. (*Id.* ¶ 3.12.) At some point after the funds were deposited into the Wells Fargo account, the funds were "withdrawn or wired or transferred to a different account" and, effectively, "disappeared." (*Id.*) As a next step, Lucky Star retained counsel and submitted a request to Wells Fargo for "return of the funds," which Wells Fargo again declined to do. (*Id.* ¶ 3.14.)

Lucky Star filed a complaint on February 2, 2021 in Snohomish County Superior Court. (Notice (Dkt. # 1) ¶ 2.) It alleges that Wells Fargo: (1) violated the Uniform Commercial Code ("U.C.C.") (Compl. ¶¶ 4.1-4.5); (2) aided and abetted in the fraudulent procurement of Lucky Star's funds (*id.* ¶¶ 5.1-5.4); (3) aided and abetted in the unlawful conversion of Lucky Star's funds (*id.* ¶¶ 6.1-6.4); (4) negligently breached duties of care it owed to Lucky Star (*id.* ¶¶ 7.1-7.4); and (5) made promises to Lucky Star on which Lucky Star detrimentally relied (*id.* ¶¶ 8.1-8.5). Wells Fargo removed the complaint to this court on December 22, 2021 (*see* Notice) and moved for dismissal seven days later, on December 29, 2021 (*see* Mot.).

### III.   ANALYSIS

Wells Fargo argues that Lucky Star's "[c]omplaint should be dismissed under Rule 12(b)(6) for failure to state a claim because it lacks a cognizable legal theory or sufficient facts alleged under a cognizable legal theory." (Mot. at 3.)  Specifically, Wells Fargo argues that:  (1) it had no obligation to "freeze, refund, or return the wired funds" once they had "been placed in the account of the beneficiary," and so could not have violated provisions of the U.C.C., as Lucky Star alleges (*id.* at 4-6); (2) Lucky Star's common law negligence claim is preempted by the U.C.C. (*id.* at 6-8); and, even if the common law claims are not preempted, (3) Lucky Star has failed to plead allegations sufficient to state a claim for negligence or promissory estoppel (*id.* at 10-11).  It further argues that Lucky Star has either withdrawn or abandoned its aiding and abetting causes of action.  (*See* Reply at 5-6.)

The court begins by describing the applicable legal standard when considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), before turning to consider whether dismissal of Lucky Star's complaint is appropriate under that standard.

**A.   Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

**B.     Lucky Star's Uniform Commercial Code Claim**

Lucky Star's first cause of action alleges Wells Fargo violated article 4A of the U.C.C. ("Article 4A") "by releasing Lucky Star's funds from the Wells Fargo [a]ccount when it had actual and direct knowledge that Flynn was not the account holder," and then "refusing to refund Lucky Star's wired funds."  (Compl. ¶¶ 3.16-3.24, 4.1-4.5.)  The court first considers whether the law of Washington—where Lucky Star's wire transfer originated—or Pennsylvania—where the wire transfer was sent—will govern this claim.  After deciding which state's substantive law to apply, the court considers whether Lucky Star has stated a claim under the U.C.C.

        1.     Choice of Law

"To determine the applicable substantive law, a federal court sitting in diversity applies the choice-of-law rules of the forum."  *Narayan v. EGL, Inc.*, 616 F.3d 895, 898 (9th Cir. 2010).  Under Washington's choice-of-law rules, the court must first consider whether a real conflict exists between the laws of Washington and the laws of another state.  *Seizer v. Sessions*, 940 P.2d 261, 264 (Wash. 1997).[2]  Both Washington and

---

[2] Lucky Star also urges the application of Pennsylvania law.  (Compl. ¶ 3.20; Resp. at 5 n.2.)  Wells Fargo does not object to the application of Pennsylvania law, or contend that a conflict exists, but nevertheless cites "Washington's Revised Code . . . for ease of reference."  (*See* Mot. at 3 n.3.)

ORDER - 5

Pennsylvania have adopted identical versions of the U.C.C., including Article 4A. *See* 13 Pa. Cons. Stat. § 4101 *et seq.*; RCW 62A.1-101 *et seq.* Because no conflict exists, the court applies Washington law. *Seizer*, 940 P.2d at 264. That does not end the inquiry, however, because the U.C.C. instructs that issues relating to "a funds transfer by the originator to the beneficiary [are] governed by the law of the jurisdiction in which the beneficiary's bank is located." *See* RCW 62A.4A-507(a); *see also* 13 Pa. Cons. Stat. § 4A507(a). Lucky Star alleges that it transferred the at-issue funds to a Wells Fargo account located in Pennsylvania. (Compl. ¶ 3.3.) Accordingly, the court will apply Pennsylvania law to Lucky Star's claim under Article 4A.[3]

### 2. Wells Fargo's Liability Under Article 4A

Lucky Star's first count alleges, in effect, that Wells Fargo behaved improperly when it received a request to deposit money into an account bearing the same account number as the wire transfer, but different account holder name. (*See* Compl. ¶¶ 4.1-4.4.) Wells Fargo argues that Lucky Star's first cause of action, which arises under P.C.C. Article 4A, must be dismissed because Lucky Star fails to allege "that Wells Fargo had actual knowledge that there was a name mismatch *at the time it processed and accepted* [Lucky Star's] [f]unds [t]ransfer" (Reply at 3 (emphasis in original)) and, accordingly, Wells Fargo's only obligations as to the transferred funds were "to 1) make payment of the amount to the beneficiary, and 2) notify the beneficiary of same" (Mot. at 4).

//

---

[3] Following the practice of courts in Pennsylvania, the court refers to the U.C.C., as incorporated into Title 13 of the Pennsylvania Consolidated Statutes, as the "P.C.C." *See Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 779 (E.D. Pa. 2008).

Article 4A of the P.C.C. governs issues arising out of electronic wire transfers. *See* 13 Pa. Cons. Stat. § 4A102; *Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp. 3d 653, 659 (E.D. Pa. Aug. 19, 2020). Section 207 of Article 4A sets forth specific obligations with which a beneficiary's bank must comply when it receives a "misdescription" payment order, depending on the nature of the misdescription. *See* 13 Pa. Cons. Stat. § 4A207. When the payment order describes the beneficiary "both by name and . . . bank account number and the name and [account] number identify different persons," the beneficiary's bank "may rely on the number as the proper identification of the beneficiary of the order" if it "does not know that the name and number refer to different persons." *Id.* § 4A207(b)(1). Subsection (b)(1) clarifies that "[t]he beneficiary's bank need not determine whether the name and number refer to the same person." *Id.* However, if the beneficiary's bank "knows that the name and number identify different persons" then "acceptance of the order cannot occur." *Id.* § 4A207(b)(2). "Knows" means "actual knowledge." *Id.* § 1202(b); *see also* 13 Pa. Cons. Stat. § 4A207, cmt. 2 ("The time of payment is the pertinent time at which knowledge or lack of knowledge must be determined.").

Thus, whether it was improper for Wells Fargo to have accepted the transfer turns on whether it actually knew on March 12, 2021 that the account number to which Lucky Star directed the funds was not held by Flynn. *See* 13 Pa. Cons. Stat. § 4A207(b); *id.* § 4A207, cmt. 2; *id.* § 1202(b).

Lucky Star fails to include any such allegation of Wells Fargo's contemporaneous knowledge. (*See* Compl. ¶¶ 3.2-3.13.) Lucky Star alleges that, as of March 18, 2021,

Wells Fargo had actual knowledge of the mismatch but provides no basis for the court to infer that Wells Fargo had actual knowledge of the mismatch at the time of the funds transfer, on March 12, 2021. (*See id.*); *see also* 13 Pa. Cons. Stat. § 4A207, cmt. 2 (describing the "standard format" by which a "very large percentage of payment orders issued to the beneficiary's bank by another bank are processed" automatically using "machines . . . that identify the beneficiary by an identifying number or the number of a bank account"). Thus, on the allegations contained in the complaint, Wells Fargo did not act improperly under Article 4A and cannot be held liable for the funds having wound up in the hands of Flynn's imposter. *See* 13 Pa. Cons. Stat. § 4A207(c); *see also id.* § 4A207, cmt. 3 (noting that where the beneficiary bank acted appropriately by depositing the transferred funds "on the basis of the [account] number without knowledge of the conflict," the risk of loss is placed "on either [the Originator] or Originator's Bank"). Accordingly, Lucky Star's first cause of action must be DISMISSED without prejudice and with leave to amend.[4]

**C.    Lucky Star's Aiding and Abetting Claims**

Lucky Star's second and third causes of action allege that Wells Fargo aided and abetted in the fraudulent procurement, and subsequent conversion, of Lucky Star's funds. (*See* Compl. ¶¶ 5.1-5.4, 6.1-6.4.) After Wells Fargo moved to dismiss these claims, Lucky Star "withdr[ew] its Third Cause of Action for Aiding and Abetting" and failed to

---

[4] Wells Fargo urges the court to dismiss this cause of action with prejudice. (*See* Mot. at 6.) Dismissal with prejudice is appropriate only where permitting leave to amend would be futile. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996). Amendment hardly seems futile in this case.

1  respond to Wells Fargo's arguments in favor of dismissing its second cause of action.

2  (*See* Resp. at 9 n.5; *see also generally id.*)  In light of this, Wells Fargo urges the court to

3  dismiss Lucky Star's second and third causes of action with prejudice based on its

4  express withdrawal or implicit abandonment of those claims.  (*See* Reply at 6.)

5  The court construes Lucky Star's footnote withdrawing its third cause of action as

6  a notice of voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1)(i).  (*See*

7  Resp. at 6 n.5.)  Because such notice was given "before the opposing party serve[d] either

8  an answer or a motion for summary judgment," dismissal without prejudice of this claim

9  is appropriate.  *See* Fed. R. Civ. P. 41(a)(1)(i); *Miller v. Reddin*, 422 F.2d 1264, 1266 (9th

10 Cir. 1970) (holding that, notwithstanding the filing of a motion to dismiss, plaintiff was

11 entitled to voluntarily dismiss its claim without prejudice "[s]ince no answer or motion

12 for summary judgment was ever filed"); 9 Charles A. Wright & Arthur Miller, *Fed. Prac.*

13 *& Proc. Civ.* § 2363 (4th ed. April 2021) ("a Rule 12(b)(6) motion does not terminate the

14 right to dismiss by notice.").

15 However, as Wells Fargo correctly points out (Reply at 5-6), Lucky Star has failed

16 to oppose dismissal of its second cause of action, alleging the aiding and abetting of a

17 fraudulent procurement (*see generally* Resp.).  Accordingly, the court deems that cause

18 of action abandoned and DISMISSES it with prejudice.  *See Walsh v. Nevada Dep't of*

19 *Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (holding that the failure to defend a

20 claim stated in a complaint in opposition to a motion to dismiss constitutes abandonment

21 of the claim).

22 //

ORDER - 9

### D.  Lucky Star's Negligence Claim

Lucky Star additionally alleges that Wells Fargo is liable for negligence because it "breached its duty of care to [Lucky Star] by releasing [Lucky Star's] wired funds from the Wells Fargo [a]ccount." (Compl. ¶¶ 7.1-8.5.)  Wells Fargo argues that this claim is preempted because the wire transfer on which it relies is "governed by, and only by" Article 4A of the P.C.C., which "was intended to create a comprehensive body of law to determine the rights of parties to funds transfers." (Mot. at 7.)  And, even if Lucky Star's negligence claim relies on "events, communications, and acts occurring *after* the wire," it is preempted all the same because "the damages [Lucky Star] alleges arise directly from, and do not exist without, the wire transfer itself." (*Id.*)

The P.C.C. provides that "the principles of law and equity," which encompass Lucky Star's negligence claim, supplement the P.C.C. unless they are "displaced by the particular provisions of" it.  13 Pa. Cons. Stat. § 1103(b).  Thus, "parallel [P.C.C.] and common law claims may be maintained except in circumstances where (1) the [P.C.C] provides a comprehensive remedial scheme, and (2) reliance on the common law would undermine the purposes of the [P.C.C.]." *Bucci*, 591 F. Supp. 2d at 779.  For issues arising out of wire transfers, Article 4A of the P.C.C. establishes "a comprehensive scheme." *Fragale*, 480 F. Supp. 3d at 659; *see also* 13 Pa. Cons. Stat. § 4A102.

Lucky Star alleges that Wells Fargo acted negligently when it deposited the transferred funds into a Wells Fargo account and permitted those funds to be withdrawn when it had "actual and direct knowledge" that the name on the account did not match Lucky Star's intended recipient, Flynn. (Compl. ¶ 7.3.)  The parties point to no binding

authority on this issue but the court is aware of at least one district court in Pennsylvania that has allowed a similar negligence claim to proceed. *See Fragale*, 480 F. Supp. 3d at 660. In that case, the plaintiff accused a beneficiary bank of negligently permitting a fraudster to withdraw funds. *Id.* The *Fragale* court reasoned that, because the challenged withdrawal occurred "***after*** the beneficiary bank (Wells Fargo) 'accepted' the wire transferred funds," the claim fell "outside of the scope of Article 4A" and was not preempted. *Id.* (emphasis in original).

The court is not bound by *Fragale*, however, and other courts addressing the issue "have widely and routinely found that the U.C.C. preempts common law claims arising out of wire transfers, especially in cases involving a name-account number mismatch." *Zeal Glob. Servs. Priv. Ltd. v. SunTrust Bank*, 508 F. Supp. 3d 1303, 1310 (N.D. Ga. 2020) (collecting cases); *see also McClellon v. Bank of Am., N.A.*, No. C18-0829JCC, 2018 WL 4852628, at *4 (W.D. Wash. Oct. 5, 2018) (dismissing cause of action for negligence as preempted by Article 4A). Those cases reason that the harm from the beneficiary bank's allegedly negligent conduct completely depends on its "treatment of the wire transfers, which is directly governed by" Article 4A. *See, e.g.*, *Zeal Glob. Servs. Priv. Ltd.*, 508 F. Supp. 3d at 1311 (rejecting plaintiff's "attempt to escape U.C.C. preemption by arguing that their claims are based on activity before and after the wire transfers"). The court finds that reasoning persuasive and adopts it for purposes of determining whether Lucky Star's negligence claim is preempted by Article 4A of the P.C.C. *See In re Pillowtex, Inc.*, 349 F.3d 711, 718 (3d Cir. 2003) ("[D]ecisions from other jurisdictions interpreting this same uniform statute are instructive.").

Accordingly, Lucky Star's common law negligence claim is preempted by Article 4A of the P.C.C. and is DISMISSED with prejudice.

### E. Lucky Star's Promissory Estoppel Claim

Finally, Lucky Star alleges that it relied to its detriment on Wells Fargo's assurance that the transferred funds would be held in the account until they could be returned to Lucky Star. (*See* Compl. ¶¶ 8.1-8.5.) Wells Fargo argues that Lucky Star's promissory estoppel claim should be dismissed because Lucky Star "does not, and cannot, allege that it changed its position based on any statement by Wells Fargo." (Mot. at 11.)

"To obtain recovery in promissory estoppel," under Washington law, Lucky Star must establish that Wells Fargo (1) made a promise which it (2) "should reasonably expect to cause [Lucky Star] to change [its] position and (3) which does cause [Lucky Star] to change [its] position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise." *See Havens v. C & D Plastics, Inc.*, 876 P.2d 435, 442 (Wash. 1994) (quotation marks omitted) (quoting *Klinke v. Famous Recipe Fried Chicken, Inc.*, 616 P.2d 644, 646 n.2 (Wash. 1980)).[5]

Lucky Star sufficiently alleges that Wells Fargo "promise[d] to hold [Lucky Star's] wired funds in the Wells Fargo [a]ccount," which is a promise on which Wells Fargo should have expected Lucky Star to rely. (*See* Compl. ¶¶ 8.3-8.4.) However,

---

[5] Because there is no conflict between the elements of promissory estoppel under Washington law and the elements of promissory estoppel under Pennsylvania law, *compare id.*, *with Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000), the court applies Washington law, *see Seizer*, 940 P.2d at 264.

Lucky Star includes no allegations about steps it actually took, or refrained from taking, in reliance on that promise. (*See generally* Compl.) And its allegation that it "relied on Wells Fargo's promise . . . to its detriment" (*id.* ¶ 8.4) is not enough to state a plausible claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, Lucky Star's fifth cause of action for promissory estoppel is DISMISSED without prejudice and with leave to amend.

## IV.  CONCLUSION

For the foregoing reasons, Wells Fargo's motion to dismiss (Dkt. # 6) is GRANTED. Lucky Star's first, third, and fifth causes of action (Compl. ¶¶ 4.1-4.5, 6.1-6.4, 8.1-8.5) are DISMISSED without prejudice and with leave to amend. Lucky Star may file an amended complaint addressing the deficiencies in these claims within fourteen (14) days of the filing of this order. Lucky Star's second and fourth causes of action, alleging the aiding and abetting of fraud and common law negligence (*id.* ¶¶ 5.1-5.4, 7.1-7.4), are DISMISSED with prejudice and without leave to amend.

Dated this 11th day of February, 2022.

JAMES L. ROBART
United States District Judge